Good morning, Your Honor. Russell Handy representing the Plaintiff and Appellant Brian Whitaker. Your Honors, if I may, I'd like to reserve two minutes for rebuttal time. Your Honor, most of our arguments are contained in the briefs, but I wanted to focus on just three areas where I really think that the District Court abused its discretion in its fee ruling. The first one, it really bothers me because it's something that keeps cropping up, and I would like the Ninth Circuit to be able to address it at some point, is this issue of complexity. Judge Fitzgerald, and I'm quoting from his order, and I think this really encapsulates his primary argument. This is on Excerpt of Record 10. He says, If the action had any complexity at all, it is likely that Potter Handy would be awarded the prevailing rate in the community. In other words, if this matter was complex in any way, we would have got the prevailing rate. But of course, we should be entitled to the prevailing rate, regardless of whether it is complex or not. The whole point of the fee-shifting statute in these civil rights cases is so that plaintiffs have access to competent counsel. Here, the Court's essentially saying that because plaintiff's attorneys specialize in this area of law and have developed an expertise, so almost all these cases become somewhat routine for them, they can't get the prevailing market rate. They must get a reduced hourly rate. In other words, no talented attorney may need to go into this area of law because you'll never be on the same level as your peers. You develop an expertise, you've done thousands of these cases, like Judge Fitzgerald says, you will not get, in his own words, the prevailing market rate. You will get a reduced hourly rate. And I know Judge Rawlinson was trying to pop in with a question too. Judge Rawlinson, can you hear us okay? Yes, I was wondering if you could hear me. We sure can. Yes. Counselor, I wanted to ask you, is it your position that the complexity of the case has no role to play in determining fees? Oh, no, absolutely. Quite the contrary. Where I think that it's relevant is, for instance, like in this case, I was looking at the billing statement. It's not in front of you, but we bill 0.6 hours for drafting the complaint. No one on the planet can do that unless they're like us and they specialize in this. We use templates. We do it. We can, in half an hour of billing a 12-page civil rights complaint. Someone else, if they're new to this area of law, they're going to spend hours doing it, researching relevant statutes or doing all this stuff. And so I think it's totally fair if a district court says, you guys are experts. You guys do this all the time. You shouldn't have billed this many hours for this particular task. That is so fair. And that's why we have to be very careful with our billing. But to say, even if you do bill a very modest amount like that, I'm still going to cut your guys. It's complex. How does the standard of review factor into this? I mean, are you claiming there's an error of law here? What is the nature of the error? Well, I think it's abuse of discretion is, of course, the standard of review, but I think it's based on the fact that the judge is applying wrong legal factors. In fact, we are entitled to the prevailing market rate. And you look at that, you look at, there's a lot of factors that go in that. I'm sorry to interrupt, but I don't want to leave complexity quite yet. You've raised it. Are there any facts in this specific case that made it especially complex or difficult? Or was it more, as the district judge felt, a routine matter? Your Honor, I do think that this was a routine ADA case. No matter of first impression, we've had plenty of those. That's not this case. But I would argue that that's true for most attorneys specializing in their fields, whether it's securities law or anything else. If that's their area of law, most of their cases are routine and they do command a prevailing market rate, what's competitive with their peers. And that was the point of civil rights fee-shifting statute, was to attract competent counsel, not to say this is an exception. I think isn't what the district court is getting at here, that there are routine cases and then there are routine cases. And I think the district court, the central district has a lot of these type of litigation, and many of it perhaps brought by your firm. But I think the reaction is not to civil rights litigation in general, it's about these types of cases. Right. And that's concerning because we often felt, the kind of joke that we have is that disability civil rights, especially ADA serial litigants, are the red-headed stepchild of civil rights litigation and they're treated as such. But there's plenty of case law, including a Supreme Court decision. I mean, there's no reason to mistreat this because there's a high volume. And there is, there's the definition. Mistreatment is one way to describe it. Another way to describe it is just an acknowledgement that the nature of the litigation is rote or can be accomplished on more of a mass basis. Absolutely. And that's why there shouldn't be a lot of hours attributed to any particular task. And I think it's very fair when a judge says, because of the routine nature, the rote nature, because you've done this a hundred times, how much are you going to bill for a default judgment package? How much are you going to bill for a declaration that by an investigator? It should be very modest. You certainly shouldn't be billing a lot of hours. That's where the focus should be, not on holding the line, not on saying, you know, you just can't get it a prevailing market rate. And that's what this judge said. You are not going to get a prevailing market rate because there was nothing complex about this area of law. And that's what bothers us because we are hammered, hammered on how many hours we spend on any particular task. And that's fair, but you- The judge also went through a number of factors. He did not just discuss complexity, right? He went through a number of factors and outlined, one might argue, he sort of covered his bases. What's wrong with his analysis other than the one comment that you've been making now repeatedly? Okay. The other thing that he said is that he said, the judge said that it was, there was a drastic imbalance. He said another thing that supported his reduction was that, and this is a quote, this is on ER 9, this drastic imbalance, more than five times the amount involved favors a reduction, end quote. But this argument is wrong because there are no damages available under the ADA. If it had just been an ADA case, we would have got zero damages. How can you compare the amount of damages recovered to the amount of attorney's fees, right? And so that's just wrong. And so it's such an odd ruling. And plus the Supreme Court has said, and I quote from the Supreme Court, a rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims, but relatively small potential damages to obtain redress from the courts. Well, you're right that there's not a hard rule. You can't have a hard rule, but I think, can you not take it into account? I don't think so because I said there's zero damages available under the ADA. So if I had just brought a pure ADA case, Title III, on behalf of my client and got zero damages, should a court be able to say, you didn't get any damages? Why would there have been zero damages? Because there actually weren't, there were no actual damages? The only damages that could have been had here were statutory? No, there's no remedy. There's no damage remedy under Title III of the ADA. That only comes under the supplemental state claim that was involved. There is zero damages permitted under Title III of the ADA. So a Title III ADA case in front of this court would have zero chance of recovery because it's just not, it's not one of the remedies that are provided by the statute. Right, but I don't think anyone's suggesting that just because the ADA doesn't make that remedy available that you couldn't get attorney's fees for that kind of case. Nobody's suggesting that. The issue is just how much attorney's fees are you entitled to? And there, the district court here said, well, I'm going to compare that to the amount that plaintiff recovered. And that's one factor among probably six or seven in this order. Right. And I'm arguing that that was an abuse of discretion. It is an improper factor, right? These are small, there's no damages available or small damages. In fact, here's a quote from Blackwell Court that I think is very relevant. If fees were limited by the amount of damages, no matter how meritorious the client's claims might be, attorneys simply would not take these cases. This would be contrary to legislative determinations that statutory attorney fees should encourage attorneys to represent disabled persons. That's Blackwell versus Foley. Are you suggesting that it's not appropriate at all to consider the case and the amount of damages? Is any of those a factor for the judge to think about, talk about? Absolutely. Complexity, definitely going to the amount that's spent on a particular task. But the amount of damages, not in a small, not in a small dollar civil rights case where the primary statute doesn't even provide for damages. How about the length of time that the case took, which was about six months? A settlement was reached early on. That's a fair factor to consider, is it not? Absolutely. For instance, the court said that there was no discovery in this case, but we didn't bill for any discovery. You have to look at the individual tasks that are done. You're not complaining about the hearing that you billed for that never took place, are you? We didn't bill for that. We put an estimate of time in our thing, and so we have to do that up front, and then we give our estimate. And if it doesn't happen, we promptly acknowledge as the court noted, yep, you can take that right off the list. So we didn't bill for false time. That's not what happened here. But my point is that you can't have proportionality rules. So this court has said repeatedly that you can't do that. So if this, I would ask this court to look at that. If you're going to say, well, five times, attorney's fees, five times the damage, I can reduce it on that basis. That is an abuse of discretion. That is contrary to the precedents by this court and the Supreme Court. Why don't we, why don't we allow you, well, you're almost out of time, but we'll put two minutes on the clock when you come up for rebuttal, just because we've been keeping you on the run. And let's hear from Ms. Mazur. Yes. Good morning, Your Honors. I'm appearing for the appellees. This is Janice Mazur. On the issue of complexity, I think that there are cases that are routine, and then there are cases that are routine. And in this case, this case is absolutely identical to thousands of others that this firm files, in which quite literally the only thing that changes in their complaint and in their litigation is the name of the defendant. So I think it's important to suggest, as they have in their brief, that there's no such thing as a simple case, I think, can't be sustained. Well, it is a simple case. I think everyone agrees on that. I think the argument that Mr. Handy is making is it's simple because he's made it simple, because he's honed a business model that allows him to do these very efficiently, and that he should be paid and shouldn't be penalized for his efficiency and experience. How do you respond to that? Well, I don't think that... You can have experience, but I disagree with his contention that in any case in which a law firm specializes in a certain area of the law, that the cases are going to become routine. This case, this type of case, is beyond routine, and it is beyond simple. And I think that a great deal of the work is something that doesn't require a great deal of expertise. Obviously, they've developed a format and so forth, and that's reasonable. But to suggest that it was simple because it was fast is incorrect. Complexity can't necessarily be subsumed by the number of hours, which seems to be the argument that counsel is making. Mr. Handy may know the answer to this better than you, and I'll ask him, or perhaps he can address it on rebuttal. But how does this fee award compare to other fee awards that have been given for cases like this in terms of the hourly rate? Is this lower, or is this what you were typically seeing in the central district? Well, I haven't looked at a lot of those cases. I mean, obviously, we've seen in the previous appeal, there was other cases that have awarded this kind of a rate, and the court has looked at that as one factor. But I think that it's all over, I took a quick look yesterday, and there are some cases where they've gotten the prevailing rate that they were asking for in this case. There's some where they've gotten less. I couldn't answer with any specificity as to how the rates awarded in this particular case compared to many others in this court or in any of the other courts in the state. One of the arguments opposing counsel makes in his briefing is the Marino case, and he argues based on that case where the court stated that a justification may be used either for a reduction in the rate for the hours spent performing that task, or as a justification for a reduction in the overall rate, but not both. Is that what happened here? No, I don't think that's what happened here. If we go back and look at the decision in Whittaker 1 that this court made, this court evaluated the reduction in hours that the court made, found that it was appropriate, and then remanded with specific instructions to consider the hourly rate based on the factors that are outlined in Marino and in Kerr and in Roberts, which include, you know, complexity, the type of work involved, rates for performed by lawyers at the appropriate level of seniority, and so forth. That was this court's remand order, and so I think that that's exactly what the court did. The court went back and said, okay, you know, we're good on the amount of hours I awarded. Now I'm going to look at all these factors as directed by the Court of Appeal and as directed by Marino and Kerr and Roberts and consider those factors and explain what my rationale is for each one of those factors, and of course that explanation is subject to an abuse of discretion standard. So no, I don't think there was any double dipping in terms of the overall analysis. I think the court followed this court's remand order. Opposing counsel also had some concern of judicial animus in ADA cases in his briefing. Are there any facts in this record or any suggestion that there was a bias or animus from the lower court? And in that regard, he also asked that it be reassigned to another judge. I don't think there's any indication of any animus. I think the court went through the factors as it was required to do and determined that because this particular case, looking at the particular facts of this case, which involved no discovery, no trial work, no motion work, no novel or difficult questions, that the amount of skill required to prosecute this case or to bring this case to finality was very limited and it didn't warrant the types of fees that are commanded by lawyers with extensive experience. And again, as we pointed out in our brief, the Potter Handy Law Firm has certainly been at the forefront of disability litigation and there's been certain cases that have been seminal cases they've been involved in. And in those cases, they'd be entitled not only to the prevailing rate, but arguably an upward departure. But when you look at a case like this, which is identical to thousands of others where nothing changes except the name of the defendant, a case that was completely unopposed, I have submitted as part of the supplemental excerpts of record the briefings submitted by the appellees and the original declaration of trial counsel saying that we immediately conceded there was violations and we wanted to just streamline this thing. There was no opposition to correcting the violations and we did so promptly. So, you know, in a case like this, there is really very, very little skill involved. And so that is, I think, one of the factors of complexity that goes to how much of an hourly rate can be commanded as opposed to number of hours. And with respect to the number of hours, I think it's somewhat ironic that Mr. Whitaker argues that the court incorrectly concluded that this case was simple just because it was fast. But I think he refutes his own argument then by contending that complexity is subsumed in the number of hours. I don't think that that's the case. I think that an inept, inexperienced attorney can spend many more hours on a case than an experienced one. And conversely, an unethical lawyer can churn hours or you can have a complex. One thing our cases have said is that you can't base a fee on how another firm would have staffed the case. And I understand Mr. Handy to be arguing that there is error on that front. Can you address that? Right. I think that the trial court addressed that. The district court expressly stated that it accepts at face value Potter Handy's claim that their staffing structure is a form of efficiency. The court did not dispute that and he did not speculate about how other firms may have staffed the case. I think that the court abided by this rule and noted that the assembly line approach that's utilized by Potter Handy demonstrates that the thousands of cases that are routine like this one are identical and require a little skill. So in other words, he's not saying it's not efficient. He's saying that it doesn't require a whole lot of skill to prosecute one of these very, very routine and unless my colleagues have further questions for you, I think we'll go ahead and hear a rebuttal. Thank you very much for your argument, Ms. Mazur. Thank you. Thank you, Your Honor. Just a couple of points is, you know, how do you identify, you know, what is purely routine? For example, take a look at this case. We had to go on appeal once and get a district court's fee ruling reversed. Now we're back again in front of the Ninth Circuit. Many attorneys would say two trips to the Ninth Circuit is not a routine case, and it does require some skill. You never know where a case, as we put in our briefs, are going to go. We've had all kinds of routine-seeming cases, and there's amazing arguments that come out of it, and it pushes the boundaries, and it tests. And I think we have something like over 100 published decisions that have helped flesh out this area of law. And so we've developed a competence, and we've developed an expertise in this area. We've done it all the way through trials and appeals and so forth. And we should be awarded our prevailing market rate. And it shouldn't just change, well, it wasn't that complex, so your hourly rate goes down. No, it should be in the actual task. If there's nothing being fought, if it's truly unopposed, then there won't be many hours in it. And if the judge says, there's too many hours here, he can identify that, like, you shouldn't have done this. But of course, this was opposed. They opposed our fee motions. They're opposing our appeal. It's not a completely unopposed case. Well, by this logic, I mean, when could hourly rate ever be below prevailing? It seems to me what you're arguing is that you should always get either the prevailing rate or plus, and if there's going to be deductions, it should be based on the task. Well, yes. So first of all, the issue of complexity, right, should go to the amount, the reasonable amount of time spent on a task. Like, if I'm required to show up to a case management hearing, that's as routine as it gets. But I'm required, and especially in federal court, the senior attorney has to be there. They're not happy with lower attorneys going. So if I have to go, and it's so simple, should I be paid at a lower rate because it was a simple task? Is there going to be, do we carve out all the different tasks and there's different hourly rates on time spent? It's never worked that way. I'm just saying that's an abuse of discretion to apply things that way. And so I just, that's what bothers me most on this is that you can easily dismiss ADA litigation. It's just routine, and so you guys will never get the prevailing rate. It'll always be some reduced rate, and I think that's an abuse of discretion. It is fairly encapsulated in the actual amount of time spent on any given task. And that's what's really frustrating because I look at our tasks and we build, we are so low in our billing on so many things that it's fair when a judge says, this shouldn't have taken you more than 40 minutes to draft this because I've seen you do this brief before. So do you have different hourly rates depending on the kind of case or is the senior attorneys billed at 595 for partners, 550 for partners? No, we pretty much bill the same. And we rarely ask for an upward, in fact, I don't know if we've ever, I'd have to check if we've ever asked for an upward modifier based on the complexity of the case. And what I'm saying is a downward modifier in this case, which was applied as we cited the case law is extremely rare. But this court is saying, I mean, the Judge Fitzgerald is basically saying, it's just like an apply a downward modifier as a matter of course, because it's a routine case. And I'm just saying, I think that's an abuse of discretion. I think that's a bad precedence. And basically it's a run around Miranda. It is a way to hold the line because you can say this on the rate that I was awarded in this case, I was being awarded in 2011. We submitted the Salinas case and the evidence of that. And so if I can't charge a higher hourly rate, no matter how efficient I am, I mean, I've argued in front of this Ninth Circuit 25 times now. I mean, I continue to increase my abilities, my ability to represent my clients, and I get better and faster at the things I do. And so I bill less hours and that's the way it's I can do it a lot more efficiently and that's the fair analysis. And I think we have your argument, Mr. Handy. I've let you go a bit over, but I want to see if my colleagues have any further questions for you. Thank you. Thank you very much, Mr. Handy and Ms. Mazur. Thank you. We appreciate the briefing and argument and this case is submitted. Thank you both.
judges: RAWLINSON, BRESS, Zouhary